(No. 4562-)

PAUL S. LANG, D.D.S., ALBERT CARROLL, GEORGE AND CHARLES WALLER, AND JOE MORRISON, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed January 14, 1958.*

WILLIAM C. ROTCHFORD, Attorney for Claimants.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

WHAM, J.

Claimants are the owners of certain aircraft, which were damaged or destroyed by fire on March 2, 1953, when a grass fire swept the Sky Haven Airport located on Wolf Road in Leyden Township, Cook County, Illinois. They contend that the fire was started by employees of the Department of Public Works and Buildings, Division of Highways, State of Illinois, on a public roadway, and negligently allowed to spread to and across the airfield burning the aircraft for which they claim damages. Respondent contends that the employees were acting outside the scope of their employment in starting the fire, and also that they were not negligent.

There is no dispute with respect to the burning of the planes, or that the fire started from the public road and spread to the airport on a dry and windy day. Only two witnesses testified to the actual occurrence of the fire. Richard E. Lloyd, manager of the Sky Haven Airport, testified that, at about 8:30 A. M. on March 2, 1953, he

observed two state employees working in the ditch picking up trash along Wolf Road, which bounded the airport on the east. A State of Illinois truck was standing nearby. He saw them as he left the airport en route to Franklin Park. At that time he observed no fire. Upon returning to the airport some 30 or 40 minutes later, he observed the two state employees tending a fire in the Wolf Road ditch bordering the airport, and poking with sticks or rakes into the fire.

A short time after reaching the airport, one of his customer's reported that there was a grass fire on the airfield, which fire rapidly spread out of control and burned the aircraft of claimants, in spite of an attempt by Mr. Lloyd and others to protect them.

After the fire had been extinguished, one of the state employees told Mr. Lloyd that he was sorry, but did not realize that the wind was going to carry the fire as rapidly as it did.

The supervisor of the state employees then told Mr. Lloyd that he was displeased with the actions of these employees, and stated that there was a regulation prohibiting them from starting fires on the border of a public road, and that they were supposed to haul the trash away to a dumping ground, rather than burn it on the road.

The only state witness regarding the fire was Sam Farina, one of the employees. He admitted starting the fire to burn trash several days before the date in question, and had, at that time, thrown a log on the fire and left, but stated that it was completely extinguished at that time. On March 2, the day of the fire, he and his helper, John Bonny, observed the log smoldering, as they were performing their duties for the state in picking up rubbish along the road. He stated that they stopped their truck,

tried to stamp it out, and, while so doing, a spark therefrom ignited a nearby paper, which in turn blew onto the airfield igniting the grass, and spreading out of control across the field to the planes. He admitted that they did not use water to extinguish the log, because they thought they could do it by stamping it out.

We find no evidence in the record to lead us to believe that anyone other than the state employees started the fire. We are also convinced from the evidence and the reasonable inferences drawn therefrom that the size of the fire prior to its spread onto the airfield was considerably larger that that of a smoldering log, and that the employees were tending a fire of burning debris. They should have foreseen that the fire would likely get out of control, and by reason of the high wind and dry grass spread across the airfield to the planes.

We do not agree with respondent's contention that the state is not responsible for the actions of the employees, which actions respondent claims were outside the scope of their employment. The fact that they violated a regulation in starting a fire to burn trash on a public road does not in and of itself place them outside the scope of their employment. This act occurred while they were pursuing their duties in clearing the roadway of debris. This was not such a departure from their duties as to constitute a frolic of their own. It was connected with the business of the state, and not for their personal benefit.

We have concluded from the evidence that this fire was started by the employees of the State of Illinois, while pursuing their duties in the scope of their employment for the state; that they negligently caused and permitted the fire to spread to the airfield; and, as a proximate result thereof, the aircraft of claimants were dam-

aged or destroyed. The claimants were in no way at fault, and respondent should be required to reimburse them for the amount of their damages, as shown by the evidence.

As to the respective damages sustained by each claimant, we have applied the recognized measure of damages, which is the cost of repair, or the difference between the cash market value before and after the damaging incident, whichever is the lesser.

Claimant, Paul S. Lang, testified that he and Joe Morrison jointly owned an airplane known as an Ercoupe, 1946, Model 415-C, 75 H. P. Engine, which they had purchased two years prior to the fire for the sum of $1,350.00. He stated that, subsequent to the purchase, they had expended approximately $460.00 in reconditioning and installing various items of equipment. He expressed an opinion that the cash market value of the plane on the date of the fire was $1,850.00. It is noted that this was the first plane owned by claimant, and his knowledge of values was acquired while shopping for the plane in the Chicago area and through reading a trade paper.

Claimant, Joe Morrison, the co-owner of the plane, testified that they had purchased it for $1,200.00, and had expended approximately $600.00 on repairs, replacements, additions and reconditioning during the first year they owned it.

The fire burned the fabric off both wings and the underside of the fuselage, and claimants expended the sum of $776.50 in repairing the damage. Claimant, Joe Morrison, testified in detail with respect to the damages and items of repair. He expressed the opinion that the repairs were necessary, and that the charges therefor were reasonable and proper.

Both claimants Lang and Morrison contend that, in addition to the damages, the plane depreciated in value, because of the fire, to the extent of $350.00.

Richard E. Lloyd, the airport manager, testified on behalf of claimants that the cash market value of the Ercoupe on March 2, 1953, prior to the fire, was $1,200.00 to $1,400.00.

Respondent's witness, Nelson Weber, testified that his occupation was aircraft insurance and sales; that he had been a licensed pilot in the State of Illinois for twenty years; that he had sold and insured many Ercoupes, and had occasion to deal with that type of plane in fixing salvage values. He then testified that, in his opinion, the cash market value of an Ercoupe equal to that of claimants was $1,000.00.

We believe that the testimony of claimants' witness, Lloyd, and repondent's witness, Weber, are entitled to more weight that that of claimant, Paul S. Lang, regarding the cash market value of the plane. The evidence reflects that their experience in such matters was considerably more extensive than his. It is noted that the co-owner, Joe Morrison, did not express an opinion on this point.

We believe from the evidence that the valuation of the Ercoupe on March 2, 1953 was between $1,000.00 and $1,400.00, and that the actual cost of repair, according to the testimony of Morrison, was $776.50.

Claimants have not shown to our satisfaction that the plane depreciated $350.00 in value in addition to the cost of repairs. After it was repaired, claimants sold the plane for $1,250.00, which was well within the area of its value on the day of the fire.

Consequently, we find from the evidence that the claim of Paul S. Lang and Joe Morirson should be allowed

in the sum of $776.50, which was the cost of repairing the damage occasioned by the state employees.

Claimant, Albert Carroll, owned a Rearwin Sportster, purchased by him on January 3, 1952 for $1,000.00 cash and cancellation of an $800.00 debt owed to him by the seller. It was then airworthy. He replaced the engine for $140.00, and added radio equipment, which he valued at $100.00. The fire completely destroyed the plane, and it was abandoned. No salvage value remained.

He acknowledged that the certificate of airworthiness had expired, and that he had not flown it since January 3, 1953. He further stated that it would require fifteen hours of a mechanic's time to disassemble the parts to determine whether or not it was airworthy. He had not applied for a certificate of airworthiness.

Claimant, Albert Carroll, expressed the opinion that the fair cash market value of the plane on March 2, 1953, prior to the fire, was $1,800.00, although on cross-examination he stated that he knew of no sales of that type of aircraft around that date. The manufacturer had discontinued making the particular type, and he had only seen one other like it since 1948. He further testified that the plane was manufactured in 1939, and had been flown 450 hours; and that the fabric had been replaced once.

Richard E. Lloyd, airport manager, testified on behalf of claimant that, in his opinion, the cash market value of the plane on March 2, 1953 was $900.00. He further stated, however, that he would not have purchased the plane.

Respondent's witness, Nelson Weber, testified that, in his opinion, an airworthy 1936 Rearwin Sportster would have had a fair market value of approximately $400.00. He admittedly did not have the exact information on the manufacturer's price, since he stated it was an

obsolete aircraft no longer listed. It is noted that he referred to a plane manufactured in 1936 rather than 1939. Therefore, his testimony could only be taken as an indication of the plane's value, rather than as an opinion on the actual valuation.

We conclude from the evidence that the fair cash market value of the aircraft immediately prior to its complete destruction was $900.00, as expressed by claimant's witness, Lloyd. It is true that claimant himself testified that its value was $1,800.00. We, however, believe that, since the burden of proof was upon claimant to establish the value, and considering the testimony of respondent's witness, Weber, as corroborating the testimony given by claimant's witness, Lloyd, rather than that of claimant himself, the $900.00 valuation has the more convincing power in our minds.

We, therefore, find that the claim of Albert Carroll should be allowed in the amount of $900.00.

Claimants, George Waller and Charles Waller, jointly owned an Interstate 300 51-B-1 Monoplane, two place cabin. They purchased it for $675.00 in 1949, installed a new engine, replaced the fabric, replaced all control cables, installed a new propeller, and made other repairs and replacements, which the witness, George Waller, stated cost an additional $1,800.00. He expressed the opinion that its fair cash market value immediately prior to the fire was $2,484.46. He testified that all of the fabric was burned off, except that on the leading edge of the wing; that the plane was not and could not be repaired, and that it was worthless.

On re-direct examination the witness stated that had he wanted to sell the plane on the date of the fire, he could have perhaps gotten only $1,400.00 to $1,500.00. He also

stated that, if he had advertised in the paper, he probably could not have gotten more than $900.00 for it.

Claimant's witness, Richard E. Lloyd, the airport manager, stated that the plane was an Army Liaison plane manufactured by Interstate Aircraft Corporation, and that, in his opinion, the fair cash market value immediately prior to the fire was between $1,200.00 and $1,500.00. He stated that he had sold the same plane, which was manufactured in 1942, to another group of men in 1947 for $1,250.00.

Respondent's witness, Nelson Weber, testified that this was a war surplus plane, which depreciates more rapidly than civilian aircraft, inasmuch as production was discontinued, because it did not prove satisfactory to the military. He stated that he had never bought or sold one of these planes, but had recently insured one. He expressed an opinion that the cash market value of the plane was $350.00.

The evidence on this question varies to a considerable extent, and it is difficult to determine therefrom what the fair cash market value was at the time of the fire.

There is evidence that the plane was sold twice, once in 1947 for $1,250.00, and again in 1949 to claimants for $675.00. The evidence with respect to the enhancement of value by claimants is not too helpful. Apparently there was $680.21 expended for materials. The only evidence of any other expenditures consists only of a general statement that the co-owners furnished their own labor to an extent of $1,000.00. There is no testimony in the record regarding the value of the alleged labor. While it is true that claimants did, to some extent, recondition the plane, and add equipment thereto after purchasing it, the

amount expended is not the test of fair cash market value, although it obviously affects the value.

In claimants' testimony regarding his opinion of the fair cash market value as being $2,484.46, he admitted that the opinion was based upon the replacement cost. This, likewise, is not the test to be applied. He then stated that, ''Perhaps I could not get more than $900.00. Perhaps it may be less than that.'' This latter statement was in answer to a question by the Commissioner as to whether he had an opinion of its worth on the open market, and not what it was worth to him.

After a consideration of all the evidence, we find that the cash market value on March 2, 1953 was $900.00. The salvage value was estimated by claimant at being $30.00. Therefore, the claim of George Waller and Charles Waller should be allowed in the amount of $870.00.

Claimants' claims herein are hereby allowed in the following amounts:

To claimants, Paul S. Lang, D.D.S., and Joe Morrison_____$776.50
To claimant, Albert Carroll_____$900.00
To claimants, George Waller and Charles Waller_____$870.00